IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| REID PARR, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:25-CV-00850 |
| BITPAY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER & EXPEDITED DISCOVERY**

Plaintiffs filed a Motion for *Ex Parte* Temporary Restraining Order and Expedited Discovery (the "Motion"), in which they seek an order requiring the freezing of accounts associated with various addresses at two cryptocurrency exchanges (the "Destination Exchanges") and authorization to issue subpoenas to those same exchanges. The Court has reviewed Plaintiffs' Motion and finds that, for the reasons set out therein, Plaintiffs face a risk of irreparable harm if the requested relief does not issue and notice to the Defendants should not be required. Accordingly, Plaintiffs' Motion is hereby **GRANTED**.

  I.  **Background**

Plaintiffs' relevant allegations are as follows. The Defendants initiated contact with Plaintiffs at various times between May 2025 and June 2025 using WhatsApp and word-of-mouth from other investors to entice them to

invest in the BitPay cryptocurrency staking platform. Dkt. 1, ¶ 16. BitPay purported to be an automated service whereby investors could link their TrustWallet cryptocurrency wallets to BitPay, using the funds in the wallets as "stakes" in various new cryptocurrencies. *Id.* The mining rewards from staking would then be returned to investors as profits deposited directly into their TrustWallet crypto wallets. BitPay claimed to have no access to the funds in Plaintiffs' linked crypto wallets. *Id.*

Between May 2025 and June 9, 2025, Defendants patiently gained access to Plaintiffs' crypto wallets, paying out thousands of dollars in fake profits to legitimize their platform and induce the investors to keep depositing funds into their crypto wallets which had been linked to the BitPay platform.

Then, on June 9, 2025, Defendants began programatically emptying Plaintiffs' wallets. Between 4:26 AM and 5:15 AM UTC, Defendants withdrew hundreds of thousands of dollars' worth of assets from Plaintiffs' crypto wallets in a series of unauthorized transfers to a cluster of intermediary receiving addresses, before transferring those funds onward from 4:49 AM to 5:15 AM UTC to a cryptocurrency bridge service, where they "hopped" the assets from the Polygon blockchain to the Tron blockchain. Defendants then transferred the stolen assets to several cryptocurrency exchanges. *Id*, ¶¶ 17-18.

Plaintiffs now allege that the BitPay platform was never an investment or staking platform of any kind. Instead, Plaintiffs allege that they were

victims of what is known as a "pig-butchering scam." *Id.*, ¶¶ 4, 19. According to Plaintiffs, this is a type of investment scam in which the perpetrators deceive victims into depositing their assets on a fake-but-realistic-looking "trading" or "investment" platform, or connecting their wallets to similarly fake-but-realistic looking applications, where no trading or investment ever occurs. *Id.*, ¶¶ 2-4. Instead, the assets are simply stolen. *Id.*

Evidentiary materials submitted by Plaintiffs show that their experience is very similar to the those of other pig-butchering victims described in journalistic outlets and law-enforcement reports. Dkt. No. 5-1, Affidavit of Evan Cole ("Cole Aff."), ¶¶ 6 – 13.

After retaining counsel, Plaintiffs engaged an investigator to perform blockchain analysis and generate "blockchain tracing" reports. This "tracing" refers to the process of following digital assets from location to location on the blockchain via publicly available data. *Id.,* ¶ 15. Plaintiffs' investigator was able to trace Plaintiffs' assets to addresses associated with two distinct cryptocurrency exchanges: Binance and OKX. *Id.* In the instant Motion, Plaintiffs ask the Court to order that these exchanges temporarily freeze the accounts associated with the addresses Plaintiffs have identified as receiving their stolen assets, to preserve assets for recovery.

II. Analysis

Plaintiffs have met the requirements for issuance of a temporary restraining order for the following reasons.

### A.     Temporary Restraining Order

The standard for issuance of an *ex parte* temporary restraining order has both procedural and substantive elements. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in a Declaration or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." FED. R. CIV. P. 65(b)(1)(A)-(B).

Both requirements are met here. Plaintiffs' Complaint, the Cole Affidavit, and the blockchain-tracing reports show the likelihood of immediate and irreparable injury or loss. These materials suggest that Plaintiffs were in fact the victims of a prevalent form of cybercrime—the "pig-butchering scam"—which features well-established and recognizable patterns of deception. *See* Complaint, ¶¶ 1-3; Cole Aff., ¶ 13 (concluding that Victim was the victim of a pig-butchering scam). Several federal courts have issued *ex parte* restraining orders in similar crypto-fraud cases, and this Court finds their reasoning persuasive here.[1]

---

[1] *See, e.g.*, *Harris v. Upwintrade*, 1:24-cv-00313-MJT (E.D. Tex.) (Aug. 8, 2024), at p. 9 (granting TRO in functionally identical pig-butchering case); *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal.

In addition, Plaintiffs' attorney has certified why notice should not be required. As discussed in the Motion, the Court has the authority to enter an *ex parte* order not only where notice to the adverse party is impracticable, but where "notice to the defendant would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2nd Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). Under this logic, courts have found that notice of an asset-freeze motion is not required if the parties to be enjoined "are likely to dissipate assets and destroy business documents," such that the very act of providing notice would "cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Several courts have found that

---

June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

this same reasoning justified issuance of *ex parte* freezing orders in crypto-fraud cases analogous to this one.[2]

Here, the thrust of Plaintiffs' allegations is that the Defendants are professional cybercriminals who have every motivation to place their ill-gotten gains beyond the reach of this Court or any other authority. While at this stage these are simply allegations, Plaintiffs have provided sufficient evidence to suggest that the Defendants would in fact further dissipate assets if they were given notice of this motion. This is sufficient to justify issuance of an *ex parte* order under these unique circumstances.

Having found that the procedural requirements for issuance of an *ex parte* restraining order are met, the Court now turns to the substantive standard. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and

---

[2] *See, e.g.*, *Gaponyuk v. Alferov*, No. 223CV01317KJMJDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable"); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

(4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

Plaintiffs have met each of these requirements. On the merits, Plaintiffs make claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, and conversion. Complaint, ¶¶ 22-33. Plaintiffs have alleged and provided evidence that the Defendants deceived Plaintiffs and misappropriated their assets in what appears to have been an intentional scam. Complaint, ¶¶ 16-20; Cole Aff., ¶¶ 6 – 13. The Court finds, at this stage, that the similarities between Plaintiffs' allegations and the widely known characteristics of this distinctive kind of scam suggest that Plaintiffs will indeed be able to prevail on these claims once a full evidentiary record is developed. In addition, the Court notes that asset freeze Plaintiffs seek in this instance is permissible in light of their request for a constructive trust over specific, traceable stolen assets, as several courts have held in analogous cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

Plaintiffs have also shown that irreparable harm will ensue absent the restraining order sought, for the same reasons explained above. In light of the speed with which cryptocurrency transactions are made, as well as the potential that the Defendants may further move the assets they are alleged to have stolen, the Court finds that Plaintiffs' request to freeze the exchange accounts to which those assets were transferred is justified, as have other courts in similar cases. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to Plaintiffs outweighs any harm the Defendants may suffer by virtue of a freeze of their accounts. Maintaining the assets at the destination accounts is perhaps Plaintiffs' only realistic chance at a future recovery in this case. In contrast, the Defendants will suffer at worst a temporary inability to move assets if the injunction is later dissolved. *See Jacobo*, 2022 WL 2052637, at *6 (finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court")."

Finally, the Court finds that issuing the injunction is in the public interest. Plaintiffs have adduced evidence showing that they are but one of many victims of what appears to be an epidemic of similar scams. A freezing order will serve the public interest here both by dissuading would-be fraudsters from preying on American citizens, and providing assurance to the

public that courts will take action to "promote … recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g., Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

### B. Expedited Discovery

Typically, parties may not seek "discovery from any source before the conference required by Rule 26(f)." FED. R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized … by court order." *Id*. Courts in this circuit apply a "good cause" standard to determine whether such an order should issue. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) (applying good cause standard). Good cause may be found where "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id*. at 239.

Many courts have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-related fraud cases like this one.[3] Indeed, in

---

[3] *See, e.g., Harris*, No. 1:24-cv-00313-MJT, at p. 9 (authorizing expedited discovery); *Strivelli v. Doe*, No. 22 cv-22060 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges in crypto case and noting "the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants"); *Licht*, 2023 WL 4504585, at *4 (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party

similar cases, courts have held that any privacy interests that alleged cybercriminals have concerning the discovery of information about their identities and activities is outweighed by the need to adjudicate victims' claims against them. *Gaponyuk*, 2023 WL 4670043, at *4 (finding alleged cybercriminals' privacy interests were "outweighed by the need to adjudicate the [victim's] claims," and holding that "privacy concerns shall not be a just cause for [a] subpoenaed non-party to withhold [] requested documents and information"). Here, Plaintiffs' proposed discovery arises from its pre-suit blockchain tracing investigation. This investigation revealed third parties likely to be in possession of information about the Defendants. The Court finds that Plaintiffs have shown good cause to issue discovery to these third parties and others likely to be in possession of information about the Defendants.

### III.  Relief Granted

#### A.  Restraining Order

For the reasons set out in the Motion, the Court finds that the accounts associated with the below blockchain addresses (the "Target Addresses") and Destination Exchanges should be frozen.

---

served with a request for production shall produce all requested items within 72 hours of the request").

| *Blockchain Address* | *Destination Exchange* |
|---|---|
| TVmjtVYSLEZU5TLgYQpKwqsJyJe3himdza | Binance |
| TKU9CiVVMM1MAqzbf9e3b6RheDneoaCDHY | OKX |
| TNRFemLi5CGccMffZz594bh1hR7TFVu7fL | Binance |
| TQbQ2M5whiNAjuA9Xxv8jBdZjHT7xqo2kc | Binance |
| TNgnTuDwxuEKPk4fjSYCBSuU96NXoyZfPd | Binance |
| TPR9DD3iPj5hWow9FxuyPFnnh9AKkXMZoR | OKX |
| TNaxq8MPxiZRokmcpq6M445sc37Dn6wN65 | Binance |
| TKWVK8hmf6pd3MLwT1q8pBeRG67GrXrnC5 | OKX |
| TD9Xsb9L43NStQ5EAx37AfoD8S6yDZJoWp | OKX |
| TAFpHLK7vyzcRtXiq3XL6Jod2Ek4mcUtog | OKX |
| TAysk5TZcvW216qiJUPR92nnbsTfoSfusW | Binance |
| TLaGjwhvA8XQYSxFAcAXy7Dvuue9eGYitv | OKX |
| THzHQN9MYQJHT7HEnUnrsA7h3QTbVsUpH1 | Binance |
| TYoBp6UwPbnHKDYir5FV8hPeKzKiUsdStg | Binance |

| | |
|---|---|
| TGj8Be7yWKS1W34MWANG2Vzv6tFfX8csNi | Binance |
| TFSqLpTUa8s6iLGEu44kMkdrQ1ftorVycw | OKX |

Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-listed target addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Target Addresses and Destination Exchanges.

In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiffs.

### IV. **Expedited Discovery**

The Court finds that Plaintiffs' request to issue expedited discovery should be **GRANTED** for the reasons set out in the Motion. Plaintiffs are authorized to serve subpoenas on the third parties listed in this Motion and other persons or entities likely to be in possession of information about the Defendants in this matter. Such subpoenas shall comply with Rule 45 and shall be served along with a copy of this Order.

All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiffs' counsel within fourteen (14) days of their receipt of Plaintiffs' subpoena and this Order.

Dated: August 22, 2025                    Prepared By:

THE HODA LAW FIRM, PLLC

*signature*

Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
Alexander J. Crous, Esq.
Tx. Bar No. 24136488
12333 Sowden Road, Suite B
PMB 51811
Houston, TX 77080
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorneys for Plaintiffs*

- 14 -