UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Reid Parr, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>BitPay, *et al.*,<br><br>*Defendants.* | Case No. 4:25-cv-00850<br><br>**Plaintiffs' Motion for Preliminary Injunction** |

Plaintiffs Reid Parr, Bradley Long, Daniel Adams, Samuel Adams, and Dylan Bost (collectively, the "Plaintiffs") hereby request that the Court enter a preliminary injunction extending the relief granted in the extant Temporary Restraining Order. In support, Plaintiffs respectfully show the Court as follows.

### I.     Preliminary Statement

The Defendants are foreign cybercriminals who stole from Plaintiffs in a pig-butchering scam. On August 27, 2025, the Court issued a Temporary Restraining Order freezing several cryptocurrency exchange accounts to which Plaintiff's assets were ultimately transferred. Plaintiffs respectfully request that the Court issue a preliminary injunction extending the account freeze through trial.

## II. Factual Allegations

Plaintiffs' Complaint and motion for the extant TRO detailed Plaintiffs' relevant allegations against the Defendants.[1] This Motion will avoid repetition, insofar as possible, by focusing on the evidence submitted in support of this Motion and recent developments.

### A. The Scam

The Defendants are a syndicate of foreign cybercriminals who stole $490,527 from Plaintiffs in a pig-butchering scam.[2] The Cole Affidavit explains why there is no doubt that the Defendants are, in fact, scammers.[3] It does so by comparing Plaintiffs' allegations and evidence to a scholarly article that examines 1,300 news articles and court documents to develop a "typology" applicable to pig-butchering scams. Plaintiffs' case is a direct analog to the cases discussed in the study, as evidenced by the Defendants' use of a fraudulent platform that impersonates a legitimate crypto services provider, the incentivization of continued investment through "mining rewards," and the unauthorized infiltration of Plaintiffs' cryptocurrency wallets.[4]

---

[1] Dkt. 1, Complaint ("Compl."); Dkt. 5, Motion for Temporary Restraining Order.

[2] Compl., ¶¶ 14 – 20.

[3] Ex. 1, Affidavit of Evan Cole ("Cole Affidavit"), ¶¶ 8 – 20.

[4] *Id.*

### B. Blockchain Tracing

At the outset of this case, Plaintiffs' investigator determined that a portion of the stolen assets were funneled by the alleged scammers to deposit addresses at the cryptocurrency exchanges Binance and OKX (the "Receiving Exchanges").[5] Plaintiff sought a Temporary Restraining Order requiring that the Receiving Exchanges freeze the user accounts that received her assets (the "Target Accounts"). The Target Accounts are listed below:

| *Target Account* | *Destination Exchange* |
|---|---|
| TVmjtVYSLEZU5TLgYQpKwqsJyJe3himdza | Binance |
| TKU9CiVVMM1MAqzbf9e3b6RheDneoaCDHY | OKX |
| TNRFemLi5CGccMffZz594bh1hR7TFVu7fL | Binance |
| TQbQ2M5whiNAjuA9Xxv8jBdZjHT7xqo2kc | Binance |
| TNgnTuDwxuEKPk4fjSYCBSuU96NXoyZfPd | Binance |
| TPR9DD3iPj5hWow9FxuyPFnnh9AKkXMZoR | OKX |
| TNaxq8MPxiZRokmcpq6M445sc37Dn6wN65 | Binance |
| TKWVK8hmf6pd3MLwT1q8pBeRG67GrXrnC5 | OKX |

---

[5] Cole Affidavit, ¶ 21.

| | |
|---|---|
| TD9Xsb9L43NStQ5EAx37AfoD8S6yDZJoWp | OKX |
| TAFpHLK7vyzcRtXiq3XL6Jod2Ek4mcUtog | OKX |
| TAysk5TZcvW216qiJUPR92nnbsTfoSfusW | Binance |
| TLaGjwhvA8XQYSxFAcAXy7Dvuue9eGYitv | OKX |
| THzHQN9MYQJHT7HEnUnrsA7h3QTbVsUpH1 | Binance |
| TYoBp6UwPbnHKDYir5FV8hPeKzKiUsdStg | Binance |
| TGj8Be7yWKS1W34MWANG2Vzv6tFfX8csNi | Binance |
| TFSqLpTUa8s6iLGEu44kMkdrQ1ftorVycw | OKX |

The Court issued a TRO to this effect.[6] Upon being served with the Court's Order, OKX and Binance implemented freezes of several user accounts. Neither exchange has yet, however, provided Plaintiffs with a document production in relation to those accounts as of the date of this filing.

Since the implementation of the account freeze, Plaintiffs' counsel has received emails from two individuals stating that their Binance accounts had been frozen and

---

[6] Dkt. 6, Order Granting Plaintiffs' Motion for *Ex Parte* Temporary Restraining Order and Order Authorizing Expedited Discovery.

### III. Relief Sought

Plaintiffs seek a preliminary injunction ordering that the Target Accounts remain frozen through trial. The balance of this Motion will explain why Plaintiffs have satisfied the applicable requirements.

> *1. Plaintiffs provided the Defendants notice of the injunction hearing and this Motion.*

Under the Federal Rules, "the court may issue a preliminary injunction only on notice to the adverse party."[7] This rule "does not require service of process, but rather requires notice to the adverse party."[8] As the Eleventh Circuit recently noted, "there is a reason Rule 65 allows emergency injunctive relief before service of process."[9] Holding that a preliminary injunction could not issue "before service of process on a defendant abroad would mean that plaintiffs could not obtain initial relief from impending or ongoing harm … for months or even years as the Hague Convention service or alternative service process unfolded."[10]

Plaintiffs' investigator provided notice of the upcoming preliminary-injunction hearing to the Defendants on September 4, 2025. Plaintiffs' investigator did so sending a copy of the Complaint, Temporary Restraining

---

[7] FED R. CIV. P. 65(a)(1).

[8] *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 542 (5th Cir. 2023) (quoting *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978)).

[9] *Sec. & Exch. Comm'n v. MCC Int'l Corp.*, No. 22-12281, 2024 WL 1508281, at *2 (11th Cir. Apr. 8, 2024).

[10] *Id.*

Order, Notice of Preliminary Injunction Hearing, a copy of the instant Motion, and a link to the public docket to (i) the WhatsApp number that Defendants used to communicate with Plaintiffs and (ii) both of the email addresses used to reach out to Plaintiffs' counsel concerning the Binance account freezes.[11]

    2.    *Plaintiffs have met the substantive requirements for issuance of a preliminary injunction.*

To obtain a preliminary injunction, the movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest.[12] Plaintiff has met these requirements for the reasons set out below.

*Element 1: The Merits*. Plaintiffs allege that the Defendants are liable for (1) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), (2) conversion, and (3) fraud. Plaintiffs are likely to succeed on the merits of each of these claims.

*RICO Claim*. To recover on a civil RICO claim, a plaintiff must show (1) a violation of 18 U.S.C. § 1962 (a "RICO violation"), (2) an injury to his business or property, and (3) that such injury was caused by the RICO violation.[13] To prove a RICO violation, a plaintiff must show that the

---

[11] Cole Affidavit, ¶ 24.

[12] *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

[13] *Lewis v. Danos*, 83 F.4th 948, 956 (5th Cir. 2023).

defendant is (1) a person[14] who engaged in (2) a pattern[15] of racketeering activity,[16] (3) connected to the acquisition, establishment, conduct or control of an enterprise.[17]

Plaintiffs' RICO claim is likely to succeed. The Complaint makes non-conclusory allegations sufficient to establish each element, including by (1) identifying and defining the Defendants' enterprise,[18] (2) explaining their pattern of wire fraud,[19] and (3) recounting the injuries Plaintiffs suffered as a direct result of the Defendants' racketeering scheme.[20] The Complaint and the Cole Affidavit show that the Defendants' scheme was the very definition of an enterprise created solely to perpetrate a pattern of wire fraud, and on a

---

[14] A RICO "person" is "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961.

[15] A "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

[16] "Racketeering activity" includes acts indictable under 18 U.S.C. § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud). 18 U.S.C. § 1961(1)(B).

[17] An enterprise is "a group of persons or entities associating together for the common purpose of engaging in a course of conduct." *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229 (5th Cir. 2003) (defining enterprise and recounting elements).

[18] Compl., ¶¶ 22 – 28; Cole Aff., ¶¶ 8 – 20.

[19] *Id.*

[20] *Id.*

global scale.[21] At least one court has issued a default judgment approving a civil RICO claim in a crypto-fraud case functionally identical to this one.[22]

*Conversion Claim.* To prevail on a conversion claim, a plaintiff must show that the defendant "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over personal property to which he has no right of possession at the time."[23] Plaintiffs' conversion claim is likely to succeed. The Complaint and the Cole Affidavit show that the Defendants acted intentionally, that their scheme was wrongful, and that they took control of Plaintiff's assets and have not returned them.[24] Numerous courts have found that plaintiffs were likely to succeed on conversion claims in in crypto-fraud cases.[25]

---

[21] *Id.*

[22] Order on Motion for Final Default Judgment, *Sun v. Defendant 1*, No. 1:23-cv-21855 (S.D. Fla. Dec. 8, 2023), pp. 3-4 ("The allegations in Plaintiff's Amended Complaint, admitted by default, establish each element of a RICO § 1962(c) violation. Specifically, Plaintiff alleges that Defendant and her co-conspirators operate a sophisticated global internet cryptocurrency fraud and conversion scheme …").

[23] *Grand Pac. Fin. Corp. v. Brauer*, 783 N.E.2d 849, 857 (Mass. App. 2003).

[24] Compl., ¶¶ 29 – 31; Cole Aff., ¶¶ 8 – 23.

[25] *See, e.g.*, *Bullock v. Doe*, No. 23-CV-3041 CJW-KEM, 2023 WL 9503380, at *5 (N.D. Iowa Nov. 3, 2023) ("Because the claim underlying this request [for an asset-freeze TRO] is mainly conversion—i.e., defendants have plaintiff's property wrongfully—plaintiff's likelihood of success on the merits of this claim suffice for this factor to weigh in favor of plaintiff and the Court need not discuss the further causes of action."); *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *4 (E.D. La. Feb. 23, 2024) ("It appears from the record that Defendants have no right to claim either possession or

*Fraud Claim.* To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.[26]

Plaintiffs' fraud claim is likely to succeed. The Complaint and the Cole Affidavit show that that the Defendants intentionally and falsely represented that Plaintiffs were staking cryptocurrency on a legitimate platform with the intention of causing Plaintiffs to transfer assets to the Defendants' control, that these statements were material to Plaintiffs, and that Plaintiffs acted on the Defendants' misrepresentations to their detriment.[27]

*Element 2: Irreparable Harm.* Dissolution of the extant asset freeze would cause irreparable harm. Cybercriminals like the Defendants can and do move crypto assets from address to address in mere seconds, with the click of a button.[28] And while courts can order the freezing and disgorgement of crypto assets held at exchange-based addresses, most assets held in "self-custody" or at non-compliant exchanges are beyond the effective reach of such

---

ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.").

[26] *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (Mass. 2017).

[27] Compl., ¶¶ 16 – 20, 32 – 33; Cole Aff., ¶¶ 8 – 20.

[28] Cole Aff., ¶¶ 24 – 25.

orders.²⁹ The tracing of Plaintiffs' assets to their present location provides a unique and fleeting opportunity to restrain further dissipation while Plaintiffs move this case toward resolution. Courts have consistently recognized that these features of blockchain technology justify the issuance of freezing orders in crypto-fraud cases.³⁰

*Element 3: Balancing.* The threatened injury to Plaintiffs outweighs any damage a freezing order might cause to the Defendants. Plaintiffs lost their life savings, and the order they seek is their only hope of preserving some assets for recovery. And while an asset freeze might cause temporary inconvenience to the restrained persons, any restraint implemented can be undone should future developments require.³¹ In addition, as detailed above,

---

²⁹ *Id.*

³⁰ *See, e.g.*, *Ohlin v. Defendant 1*, No. 3:23-C-8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DADBAKBAM, 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe,* No. 1:22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

³¹ *See, e.g.*, *Licht*, 2023 WL 4504585, *3 (balancing factor weighed in plaintiff's favor because alleged crypto-thieves faced only "inconvenience" of asset-freeze, which could be undone); *Jacobo*, 2022 WL 2052637, at *6 (same, finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to

the Defendants have received notice of this proceeding.[32] If they so choose, they are free to contest the issuance of the injunction at the upcoming hearing or to seek to have the injunction dissolved at any point before final judgment.

*Element 4: Public Interest.* A freezing order will serve the public interest because it will "dissuade would-be fraudsters from stealing, laundering illegal proceeds, and preying on Americans" like Plaintiffs.[33] It will also "prevent the Defendants from profiting from their scheme, ensuring they lack resources and incentives to perpetrate similar schemes in the future,"[34] and "provide[] assurance to the public that courts will take action to promote … recovery of stolen assets when they can be readily located and traced to specific locations."[35] In this case, the public interest weighs heavily in favor of the requested injunction. In 2024 alone, pig-butchering scammers stole more than $5 billion from *tens of thousands* of American victims. The public interest overwhelmingly favors preserving victims' only potential source of recovery through the issuance of injunctive relief.

---

transfer the allegedly purloined assets into other accounts beyond the reach of this court").

[32] Cole Affidavit, ¶ 26.

[33] *Licht*, 2023 WL 4504584, at *3.

[34] *Id.*

[35] *Jacobo*, 2022 WL 2052637, at *6 (quoting *Heissenberg*, 2021 WL 8154531, at *2); *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

3.   *The Court has the authority to issue the asset-freezing injunction Plaintiffs seek.*

Typically, a court may issue an order freezing a defendant's assets only after a plaintiff has brought his claims to judgment.[36] This rule does not apply, however, where the plaintiff seeks equitable relief and a constructive trust over traceable stolen assets.[37] Plaintiffs seek just such relief here.[38] For that reason, the Court has the authority to issue the asset-freezing injunction Plaintiffs seek.

4.   *The Court should not require a bond.*

Rule 65(c) provides that a court issuing a preliminary injunction should do so "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[39] Yet, "[c]ourts retain extensive discretion to set the amount of a bond required as a condition for issuing a preliminary injunction and may, in fact, elect to require no bond at all."[40] The

---

[36] *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999).

[37] *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that "numerous district courts … have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

[38] Dkt. 1, ¶ 35.

[39] FED. R. CIV. P. 65(c).

[40] *Astrove*, 2022 WL 2805345, at *5 (declining to require bond in crypto-theft case); *Jacobo*, 2022 WL 2052637, at *6 (same).

- 13 -

Defendants will not suffer any damages due to the requested asset freeze, which—as explained above—can be undone at any time if the Defendants choose to appear and challenge the injunction. Plaintiffs thus request that the Court decline to impose a bond.

### IV.   Conclusion

For the reasons set out above, Plaintiffs have met the standards for issuance of a preliminary injunction. Accordingly, Plaintiffs request that the Court issue grant relief in substantially the form of the proposed order submitted with this Motion.

Dated:  September 8, 2025         Respectfully submitted,

THE HODA LAW FIRM, PLLC

_/s/ M. Hoda_____
Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
3120 Southwest Fwy
Ste 101, PMB 51811
Houston, TX 77080
marshal@thehodalawfirm.com
o. (832) 848-0036

*Attorney for Plaintiffs*