## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| Reid Parr, Dylan Bost, Bradley Long, Daniel Adams, and Samuel Adams, | Case No. 4:25-cv-00850 |
| *Plaintiffs*, | |
| v. | **Plaintiffs' Opposition to Defendant Ran Kim's Motion to Dismiss** |
| BitPay, a general partnership, Ran Kim, Huang Hao Lin, and John Does 1 – 20, | |
| *Defendants*. | |

Plaintiffs Reid Parr, Bradley Long, Daniel Adams, Samuel Adams, and Dylan Bost (collectively, "Plaintiffs") respectfully submit this Opposition to Defendant Ran Kim's Motion to Dismiss (the "Motion"). The Motion is legally misguided and ignores the well-pled allegations of the First Amended Complaint ("FAC"). It should be denied in its entirety.

- 1 -

## Background

Our country is in the midst of a crypto-fraud crisis.[1] Foreign criminal organizations have stolen billions of dollars from hardworking Americans in what are known as "pig-butchering scams"—and are continuing to do so even as we speak.[2]

Pig-butchering scams vary in their particulars, but in outline they are all the same.[3] The scammers begin by initiating contact with and building trust with the victims, using diabolical psychological techniques to lower their targets' defenses.[4] They then convince the victim to "invest" using a realistic-looking online cryptocurrency-trading platform.[5] The victims deposit money or connect their cryptocurrency wallets directly and, over time, profits appear to grow.[6] But the scammers will then demand fees when victims try to withdraw their investments, or will abuse the connection to their victims' wallets to abscond with their invested assets.[7]

---

[1] FAC ¶¶ 1 – 4.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

This case arises from a pig-butchering scam that stole hundreds of thousands of dollars from the Plaintiffs. Plaintiffs allege that Defendants operated the fake BitPay "staking" platform and used it to induce victims to link their TrustWallets to BitPay under the guise of automated cryptocurrency staking.[8]

After gaining access, Defendants executed a coordinated mass-theft event on June 9, 2025, between 4:26 and 5:15 AM UTC, draining Plaintiffs' wallets of $490,527.[9] The stolen assets were then laundered through intermediary wallets, bridged from Polygon to Tron, and sent to off-ramp exchange accounts—including a Binance account controlled by Defendant Ran Kim.[10]

The Court issued a Temporary Restraining Order freezing these accounts and subsequently granted Plaintiffs' Motion for Preliminary Injunction and extended that freeze through trial.[11] After the freezes, Kim contacted Plaintiffs' blockchain investigator and identified herself as the owner of one frozen account.[12]

---

[8] FAC ¶¶ 18–24.

[9] FAC ¶ 4, 20.

[10] FAC ¶¶ 20–21, 24.

[11] FAC ¶ 23.

[12] FAC ¶ 24.

## **Argument**

Defendant Kim's Motion to Dismiss fails at the outset because it is procedurally improper. Rule 12(b) prohibits a defendant from filing a motion to dismiss after filing an Answer, as Kim has done here. That procedural defect alone warrants denial. But even were the Court to look past this bar, the Motion fails on the merits. As explained below, each of Kim's arguments rests on a misunderstanding of the governing standards and a misreading of the factual allegations in the First Amended Complaint. For these reasons, the Motion should be denied.

### I.    **The Motion is procedurally improper.**

Kim's Motion to Dismiss should be denied at the threshold because it is procedurally improper. Federal Rule of Civil Procedure 12(b) expressly requires that a motion asserting any Rule 12(b) defense "must be made before pleading if a responsive pleading is allowed."[13] Kim, however, filed her Answer on October 14, 2025, and then more than a month later, on November 25, 2025, filed the present Motion to Dismiss. Because a defendant cannot invoke Rule 12(b) after answering the complaint, the Motion is untimely and should be denied on that

---

[13] FED. R. CIV. P. 12(b).

basis alone. Nonetheless, out of an abundance of caution, Plaintiffs address the Motion's arguments on the merits below.

Discovery in this matter is actively underway. The only reason Plaintiffs have not yet noticed Kim's deposition is that they are awaiting the imminent production of Kim's Binance account records from the third-party exchange—records that are essential to structuring an effective examination and that Plaintiffs expect to receive promptly. Plaintiffs are also preparing to move for default judgment against the defendants who were properly served but have failed to appear. Should the Court find it appropriate, Plaintiffs would welcome the denial of Kim's Motion accompanied by the entry of a scheduling order to ensure orderly progress toward resolution.

## II.    The Motion fails on the merits.

Kim's Motion argues that (i) service was improper, (ii) the Court lacks personal jurisdiction over her, and (iii) Plaintiffs have failed to state a RICO claim. Each argument fails, for the reasons set out below.

### A.    Kim was properly served.

The Court previously authorized service on Kim by email.[14] Plaintiffs served Kim in accordance with the Court's Order and filed a proof of service on September 19, 2025.[15]

This was proper service under Federal Rule of Civil Procedure 4(f)(3). This rule allows a district court to order that a foreign defendant be served by any method reasonably calculated to give notice of the proceedings, provided that the method is not *prohibited* by international agreement.[16] It is settled law that "[s]ervice pursuant to the Hague Convention listed in subsection (f)(1), does not displace subsection (f)(3), which permits service by other means."[17]

---

[14] Dkt. 11.

[15] Dkt. 18.

[16] FED. R. CIV. P. 4(f)(3) (providing that a party "may be served at a place not within an judicial district of the United States … by other means not prohibited by international agreement, as the court orders"); *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022) (citing Rule 4(f)(3) and noting that "[s]ervice on a foreign defendant is [] proper when it is a court ordered method that is not prohibited by international agreement and is reasonably calculated, under the circumstances, to notify the defendant of the case and afford them an opportunity to present objections").

[17] *Viahart*, 2022 WL 445161, at *3 ("Service pursuant to the Hague Convention listed in subsection (f)(1), does not displace subsection (f)(3), which permits service by other means." (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018)).

The cases Kim cites are not to contrary. Each of these cases concerned instances in which the plaintiff *unilaterally* attempted service by some means not authorized by the Hague Convention, without seeking authorization of service by "other means" under Rule 4(f)(3).[18] In fact, none of the cases cited by Defendant Kim so much as *mentions* Rule 4(f)(3). Defendant Kim's reliance on these cases is therefore misplaced.

Because the Court expressly authorized service on Defendant Kim by email, and because there is no dispute that Defendant Kim received actual notice of this proceeding as a result of that service, the only remaining question is whether service by email on an individual in South Korea is *prohibited* under international agreement. Courts have repeatedly held that email service is *not* prohibited in South

---

[18] *Baskett v. Autonomous Rsch. LLP*, No. 17-CV-9237 (VSB), 2018 WL 4757962, at *12 (S.D.N.Y. Sept. 28, 2018) (service improper where plaintiff served by process server in United Kingdom without seeking authorization of service by "other means" under Rule 4(f)(3)); *SeaCube Containers LLC v. Compass Containers & Shipping Servs. Ltda.*, 427 F. Supp. 3d 497, 498 (S.D.N.Y. 2019) (service improper where plaintiff served by Federal Express in Brazil, without seeking authorization of service by "other means" under Rule 4(f)(3)); *Touchpoint Projection Innovations, LLC v. CDNetworks Co.*, No. 2:23-CV-00233-JRG, 2024 WL 4028034, at *3 (E.D. Tex. Aug. 30, 2024) (service improper where plaintiff served by Texas Secretary of State without seeking authorization of service by "other means" under Rule 4(f)(3)).

Korea.[19] "Although South Korea has objected to Article 10 of the Convention, which provides for 'the freedom to send judicial documents by postal channels, directly to persons abroad,' courts have concluded that an objection to Article 10 does not prohibit service by electronic communication, because when sending service of process by email, there is no service by postal channels."[20] Defendant Kim has cited no authority to the contrary, and Plaintiffs are aware of none. Defendant Kim's sole cited case here does not contain any discussion of email service, and the Motion does not explain its supposed relevance.[21]

## B.    The Court has personal jurisdiction over Kim.

The Court has personal jurisdiction over Kim for three independent reasons. First, the Court has "loop-in" jurisdiction over Kim under RICO Section 1965(b). Second, the Court has jurisdiction over Kim under Federal Rule of Civil Procedure 4(k)(2). Third, the Court has jurisdiction over Kim under *Fuld*, the Supreme Court's recent watershed decision that dramatically expanded federal courts' jurisdiction foreign defendants who harm United States citizens.

---

[19] *See, e.g., Choi v. Kim*, No. 24-CV-6526 (JGK), 2025 WL 1883664, at *1 (S.D.N.Y. July 7, 2025) (noting that "service by email on an individual in South Korea is not prohibited by the Convention" and collecting cases).

[20] *Id*. (internal quotation marks omitted).

[21] *Touchpoint Projection Innovations,* No. 2:23-CV-00233-JRG, 2024 WL 4028034, at *3 (no discussion of email service)

      1.    *The Court has personal jurisdiction over Kim under RICO Section 1965(b).*

In civil RICO actions, like this one, 18 U.S.C. § 1965(b) authorizes nationwide service of process and permits a federal court to exercise personal jurisdiction over additional defendants—including foreign actors—when personal jurisdiction is established in the forum state over at least one defendant and "the ends of justice" require bringing the entire enterprise before a single court.[22] Under this standard, at the first step, the court asks whether at least one defendant is subject to personal jurisdiction on the traditional minimum-contacts standard— i.e., whether a defendant purposefully directed activities that gave rise to the suit toward the forum state.[23] If so, at the second step, the court asks whether the "ends of justice" requires nationwide service of process and personal jurisdiction over the remaining defendants.[24]

---

[22] *Xlink Res. Grp., LLC v. Expo Petroleum Oil & Gas USA, LLC*, No. 4:24-CV-35, 2025 WL 2412646, at \*6 (E.D. Tex. Aug. 20, 2025) (Mazzant, J.) (discussing personal jurisdiction under RICO Section 1965(b) in detail).

[23] *Id.; see also Calder v. Jones*, 465 U.S. 783, 789–90 (1984) (effects test); *Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 946– 48 (11th Cir. 1997) (foreign participants in U.S.-directed RICO scheme subject to nationwide-contacts jurisdiction).

[24] *Xlink*, 2025 WL 2412646, at \*6.

As the Court noted in a recent decision, the meaning of "ends of justice" is unresolved in the Fifth Circuit.[25] Some district courts require plaintiffs to show that there is no other district in which a court would have personal jurisdiction over all the alleged co-conspirators on the traditional forum contacts analysis.[26] Others have approved a more expansive, case-by-case inquiry, in which the court considers whether the defendants should be brought into the forum in light of the congressional directive to "liberally construe[] RICO to effectuate its remedial purposes."[27]

The Court has personal jurisdiction over Kim under this analytical framework. At the first step, defendant **BitPay** is plainly subject to personal jurisdiction under traditional minimum-contacts analysis. As the Complaint alleges, BitPay and its agents affirmatively reached into Texas, initiating contact with Plaintiff Dylan Bost—"a United States citizen residing in Texas"—to recruit him into the BitPay scheme.[28] BitPay "initiated contact with Plaintiffs . . . using WhatsApp and word-of-mouth" and made its fraudulent platform "available to . . .

---

[25] *Id*.

[26] *Id*.

[27] *Id*.

[28] FAC ¶ 10.

Mr. Bost, one of the plaintiffs . . . who is a resident of Texas and was located in Texas while the Defendants perpetrated the scam."[29] BitPay induced Bost—while in Texas—to link his TrustWallet, represented that the staking platform was legitimate, and then stole his assets in a coordinated series of unauthorized withdrawals[30] These facts satisfy purposeful availment, demonstrate that Plaintiffs' claims arise directly from BitPay's Texas-directed conduct, and establish that exercising jurisdiction comports with fair play and substantial justice.[31]

Second, having established minimum contacts over BitPay, the ends of justice require the exercise of personal jurisdiction over Ran Kim. Plaintiffs allege that Kim is an integral member of the same Enterprise—one of the individuals who laundered the stolen cryptocurrency, who personally identified herself as the owner of a frozen off-ramp exchange account used to wash the proceeds of the fraud.[32] This is true whether the Court adopts the narrower or broader view of the "ends of justice" discussed above. Under the narrower view,

---

[29] FAC ¶ 16.

[30] FAC ¶¶ 18-21.

[31] *Compare CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1208–13 (10th Cir. 2020) (finding personal jurisdiction over foreign defendant under RICO where defendant perpetrated financial fraud scheme on U.S. citizens from abroad).

[32] FAC ¶¶ 20, 24, 26–29.

Plaintiffs know of no other state that would have jurisdiction over all the defendants, all of whom are foreign nationals with no known state of general jurisdiction. Under the broader view, allowing Kim to escape this litigation would frustrate the purposes of RICO by preventing adjudication of the same coordinated conduct in this forum, frustrating the Court's ability to grant complete relief, undermining the existing asset freeze, and risking inconsistent results. In either framework, bringing Kim into the same case as BitPay is necessary to ensure the full and fair administration of justice.

      2.    *The Court has personal jurisdiction over Kim under Federal Rule of Civil Procedure 4(k)(2).*

Federal Rule of Civil Procedure 4(k)(2)—the "federal long-arm statute"—provides an independent basis for jurisdiction. Rule 4(k)(2) applies where (i) the plaintiff's claims arise under federal law, (ii) the defendant is not subject to jurisdiction in any one state, and (iii) exercising jurisdiction is consistent with the Constitution. All three conditions are satisfied here.

The first prong is satisfied because this is, of course, is a federal RICO action. The second prong is satisfied under the "switching test" applied in the Fifth Circuit. Under this test "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to

confer jurisdiction."[33] Kim affirmatively denies being subject to jurisdiction in Texas and identifies no other state in which she concedes jurisdiction, thereby triggering the switching mechanism here. As to the third prong, as the Supreme Court's recent decision in *Fuld*— discussed in more detail in the following section—confirms that the constitutional inquiry under Rule 4(k)(2) requires, *at most*, allegations that the defendant purposefully directed conduct at the United States as a whole.[34] For the reasons already noted—her admitted ownership of an cryptocurrency-exchange account that received stolen assets from the BitPay scheme,  and her alleged role as the laundering endpoint of a systematic fraud and conversion scheme aimed squarely at U.S.

---

[33] *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (finding jurisdiction under Rule 4(k)(2) where defendant "challenged the existence of minimum contacts with the United States as a whole," "ha[d] not offered other venues in [the U.S.] where personal jurisdiction would attach," and argue[d] that it [could not] be sued in the United States").

[34] *See Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 18 (2025) (holding for the first time that the Fourteenth Amendment's minimum-contacts framework does not apply to the Fifth Amendment for statutes in which Congress authorized nationwide service of process, as does RICO); *Cent. Am. Bank for Econ. Integration v. Mossi*, No. 24-CV-2544 (CRC), 2025 WL 2732731, at *8 (D.D.C. Sept. 25, 2025) (interpreting *Fuld* in RICO case against foreign defendant and writing that "*Fuld* lowers the constitutional floor when it comes to evaluating a federal court's exercise of personal jurisdiction under the Fifth Amendment Due Process Clause" and applying nationwide-contacts analysis, while noting that the inquiry may be even *less* stringent in light of *Fuld*'s ruling).

citizens—that standard is met. Rule 4(k)(2) therefore independently establishes personal jurisdiction over Kim.

> 3. *The Court has personal jurisdiction over Kim under* Fuld *because the BitPay syndicate intentionally targeted U.S. citizens.*

The Supreme Court's recent decision in *Fuld* is a watershed moment for victims of international cybercrime like the plaintiffs. There, the Supreme Court held that Congress validly authorized federal courts to exercise personal jurisdiction over foreign defendants who carry out or materially support terrorist attacks that kill or injure Americans *abroad*, even when those defendants would not be subject to jurisdiction in the federal courts under the familiar minimum-contacts analysis flowing from *International Shoe*.[35] The Court explained that these statutes reflect Congress's judgment that foreign actors who harm Americans should not be able to escape suit in U.S. courts merely because they acted overseas.[36] In doing so, the Court significantly expanded the federal courts' reach, confirming that when Congress enacts federal statutes aimed at protecting Americans from foreign harm, federal jurisdiction may extend to foreign defendants far beyond

---

[35] *Fuld*, 606 U.S. at 3. The statutes at issue in *Fuld* were the Anti-Terrorism Act and the Promoting Security and Justice for Victims of Terrorism Act.

[36] *Fuld*, 606 U.S. at 13-15.

what the Fourteenth Amendment's minimum-contacts framework
would permit.[37] *Fuld*'s ultimate holding was that, in federal-question
cases involving foreign defendants, personal jurisdiction must reflect
the "more flexible jurisdictional inquiry commensurate with the
Federal Government's broader sovereign authority."[38] The Court left it
to the lower courts to determine how this inquiry would apply in future
cases, and under other similar statutes.

Pig-butchering syndicates inflict staggering economic harm on
tens of thousands of Americans each year, using deliberately
transnational structures to avoid accountability. Protecting Americans
from financial ruin at the hands of coordinated, foreign cyber-fraud
syndicates is no less compelling than protecting them from physical
injury, and due process must be interpreted in a manner that permits
meaningful redress. Under *Fuld*'s flexible national-contacts
framework, this Court should hold that in international cyber-scam
cases, under RICO, the nationwide contacts of the *entire syndicate* may
be imputed to each member for jurisdictional purposes—particularly
where, as here, the enterprise functions as a coordinated criminal unit

---

[37] *Id.*

[38] *Id.*

with one defendant (here, BitPay) serving as the "tip of the spear" with others (like Kim) serving as money launderers and in other roles that may result in less direct, affirmative contact with victims. This approach accords with *Fuld*'s recognition that federal courts must be able to reach foreign actors who injure Americans from abroad, and it prevents the precise injustice *Fuld* sought to avoid.

4. *Kim's cited cases misstate the applicable standard.*

Kim's cited cases misstate the applicable standard. At this stage, Plaintiffs are required to make only a *prima facie* showing of personal jurisdiction—not to prove it by a preponderance of the evidence, as Kim suggests.[39] And, for the reasons explained above, the relevant personal jurisdiction inquiry here concerns Kim's contacts with *the United States*, not with Texas, as Kim suggests.[40]

C. **Plaintiffs stated a cause of action under RICO.**

Kim's Rule 12(b)(6) challenge rests on a fundamental misreading of the Complaint and of the applicable pleading standards. Kim repeatedly accuses Plaintiffs of having failed to "submit[] evidence" in support of their claims. But, of course, at the pleading stage, Plaintiffs

---

[39] *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[40] *Xlink*, 2025 WL 2412646, at *6.

are not required to submit evidence at all—they need only allege facts that, taken as true, plausibly state a claim for relief.[41]

The First Amended Complaint satisfies the applicable standard: it provides a detailed narrative of the fraudulent scheme, identifies each Defendant's role within the Enterprise, and alleges specific conduct that constitutes racketeering activity. The FAC pleads—with detail that exceeds Rule 8 and Rule 9(b)—that (1) the Defendants formed an association-in-fact enterprise; (2) each Defendant participated in the conduct of that enterprise; (3) the enterprise engaged in a pattern of racketeering activity consisting of repeated acts of wire fraud and money laundering; and (4) Plaintiffs suffered concrete, quantifiable financial loss as a direct result.[42] These allegations track *Boyle v. United States*, which held that an association-in-fact enterprise need only have (i) a purpose, (ii) relationships among associates, and (iii) sufficient longevity to pursue the purpose.[43] Accordingly, Plaintiffs have stated a civil RICO claim.

Defendant Kim's argument—that Plaintiffs "did not allege what Defendant Ran Kim did"—is facially incorrect. The FAC expressly

---

[41] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[42] FAC ¶¶ 1-4, 20, 26–32

[43] 556 U.S. 938 (2009).

alleges Kim is one of the individuals who controlled and used a receiving exchange account to launder stolen funds, which is a core role within pig-butchering enterprises.[44] Kim further asserts that Plaintiffs failed to specify "what kind of TrustWallet they had" and that they "did not allege their damage." But a "TrustWallet" is a particular type of cryptocurrency wallet that the Plaintiffs used—there is no such thing as a different "kind" of TrustWallet. And Plaintiffs state the amount stolen from them by the TrustWallet syndicate in the FAC.[45] Kim has cited no authority suggesting that a plaintiff-by-plaintiff breakdown is required at the pleading stage where, as here, the collective loss amount is clearly stated and the details of the defendants' campaign of theft and fraud are clearly alleged.

### III.   Alternative Relief

For all the reasons set out above, Kim's Motion should be denied. If, however, the Court finds any of Kim's arguments persuasive, Plaintiff respectfully requests alternate relief to ensure that this case is resolved on the merits and not on an undeveloped or incomplete factual record.

---

[44] FAC ¶ 24.

[45] FAC ¶ 4.

### A.    *Plaintiffs seek jurisdictional discovery.*

If the Court has any doubt about personal jurisdiction, Plaintiffs should be permitted to conduct jurisdictional discovery. The Fifth Circuit authorizes jurisdictional discovery where, as here, the defendant challenges the Court's jurisdiction, and the relevant facts are controverted or unknown.[46]

The situation here is somewhat confused by the fact that, as noted above, Defendant Kim previously filed an Answer and later filed the instant Motion to Dismiss. Thus, Plaintiffs' position is that they are already entitled to discovery from Kim, which they intend to seek as soon as they receive her account records from Binance. But should the Court see fit to consider Kim's arguments on the merits, and should the Court find Kim's jurisdictional arguments persuasive, Plaintiffs request authorization to promptly seek jurisdictional discovery.

### B.    **Leave to amend should be freely granted.**

If the Court identifies any deficiency in the First Amended Complaint, Plaintiff respectfully requests leave to amend under Rule

---

[46] *Matter of Am. River Transp. Co. LLC*, 533 F. Supp. 3d 355, 362 (E.D. La. 2021) ("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts[,] plaintiff's right to conduct jurisdictional discovery should be sustained.") (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).

15(a)(2). The Rule 15 standard is generous: courts "should freely give leave when justice so requires," and the Fifth Circuit repeatedly emphasizes that leave should be granted absent futility or bad faith. Neither is present here. Since filing the First Amended Complaint, Plaintiffs have obtained additional tracing data, expert analysis, and documentary evidence that could support substantial further allegations. If the Court believes additional detail would assist the analysis, Plaintiffs can and will amend promptly.

## IV.   Conclusion

For the foregoing reasons, the Motion should be denied.

Dated:  December 10, 2025                    Respectfully submitted,

                                            THE HODA LAW FIRM, PLLC


                                            _____
                                            Marshal J. Hoda, Esq.
                                            Tx. Bar No. 24110009 (PHV)
                                            3120 Southwest Fwy
                                            Ste 101 PMB 51811
                                            Houston, TX 77098
                                            o. (832) 848-0036
                                            marshal@thehodalawfirm.com

                                            *Attorney for Plaintiffs*